**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| CON-TECH SYSTEMS, LTD.,<br>Plaintiff,<br><br>v.<br><br>VERMONT LUMBER & STONE WORKS, INC.,<br>RAGNAR BENSON, LLC., and<br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>Defendants. | ) | **CIVIL ACTION**<br>**No. 12-40107-TSH** |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS, RAGNAR BENSON CONSTRUCTION, LLC AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION TO STAY CROSS CLAIMS AND TO COMPEL ARBITRATION (Docket No. 41)**
**September 27, 2013**

**HILLMAN, D.J.**

## Background

Plaintiff, Con-Tech Systems, Ltd. ("Con-Tech") filed an Amended Complaint against Vermont Lumber & Stone Works, Inc. ("Vermont L&S"), Ragnar Benson, LLC ("Ragnar") and Travelers Casualty and Surety Company of America ("Travelers") alleging claims for: breach of contract (Count I- Vermont); and Action on Bond (Count II-Ragnar and Travelers).[1] Vermont

[1] On January 29, 2013, the parties filed a Stipulation for Judgment (Docket No. 35), stipulating that judgment enter against Vermont L&S in the amount of $708,441.59, including all interest and costs. Thereafter, on February 19, 2013, Vermont L&S filed a Motion To Strike Count I of The Amended Complaint (Docket No. 39), which the Court allowed without objection. *See* Docket No. 46.

L&S has filed a cross-clam against Ragnar and Travelers for indemnification.[2] Ragnar has filed cross-claims against Vermont L&S for contractual indemnification (Count I), breach of contract (Count II), specific performance (Count III), and negligence (Count IV). This Memorandum of Decision and Order addresses *Defendants, Ragnar Benson Construction, LLC and Travelers Casualty and Surety Company of America's Motion To Stay Cross Claims and To Compel Arbitration* (Docket No. 41)("*Defs.' Mot.*").

**Background**

Ragnar served as the general contractor for CSX Intermodal, Inc. ("CSX") on a construction project known as the CSX Intermodal Terminals IMF Expansion, Main Line and Siding (the "project"). Ragnar entered into a subcontract with Vermont L&S. Con-Tech entered a series of purchase agreements with Vermont L&S pursuant to which Con-Tech would supply materials for the project and be reimbursed by Vermont L&S. Con-Tech submitted sixty (60) separate and distinct invoices to Vermont L&S for project materials in the total amount of $2,037,348.08. Vermont paid Con-Tech a total of $1,328,906.49, leaving a balance of $708,441,59.

Travelers, as surety, executed a payment bond on behalf of Ragnar as principal. After continued non-payment from Vermont L&S, Con-Tech submitted written notice to Ragnar and Travelers and a proof of claim for the unpaid amount. The underlying claim by Con-Tech against Vermont L&S has been settled. What remains in the case are Con Tech's claim against Ragnar and Traveler's for reimbursement under the payment bond; Con Tech asserts that Ragnar

[2] On February 28, 2013, Vermont L&S filed a motion for leave to assert additional cross-claims against Ragnar and Travelers in the form appended to its motion. *See Mot. of Vermont Lumber & Stone Works, Inc. For Leave To Assert Additional Cross Claims* (Docket No. 40). The Court allowed the motion on March 26 2013. To date, Vermont L&S has not filed the additional cross-claims.

and Traveler's are jointly and severally liable under the bond[3]. Also outstanding are the respective cross-claims which Ragnar and Vermont L&S have filed against each other.[4]

## Discussion

Ragnar and Travelers assert that the subcontract between Ragnar and Vermont L&S requires that claims between Ragnar and Vermont L&S relating to the project be submitted to arbitration. Accordingly, Ragnar and Travelers have moved pursuant to the Federal Arbitration Act , 9 U.S .C. §§ 3–4 ("FAA"), to stay the proceedings and compel arbitration of these parties' respective cross-claims.

### *Applicable Contract Provisions*

Ragnar, as he general contractor, entered into a contract with CSX, which provides in relevant part as follows:

> Article 11. DISPUTE RESOLUTION
>
> 11.1 CLAIMS AND DISPUTES
>
> 11.1.1
>
> Definition: A "Claim" is a demand or assertion by Owner [CSX] or Design/Builder [Ragnar] seeking, as a matter of right, adjustment or interpretation of the Design/Build Agreements terms, payment of money, extension of time, or other relief with respect to the terms of the Design/Build Agreement or the Project.
> …

---

[3] In their submission to the Court, Ragnar and Travelers indicated that they had reached an agreement to settle Con-Tech's claim against them and therefore, all that would remain alive in the case are the cross-claims. To date, the parties have not filed a stipulation as to dismissal of Count II of Con-Tech's Amended Complaint. Since on the face of the pleadings it would appear that there is complete diversity between Ragnar and Vermont L&S, the dismissal of Count II would not negate the Court's exercise of subject matter jurisdiction over the cross-claims.

[4] For purposes of providing a factual background only, the Court has summarized the factual assertions made by Con-Tech in its Amended Complaint. The Court recognizes that Vermont L&S, Ragnar and Travelers have their version of the facts which may conflict with and/or supplement those facts included above. These parties' factual disputes *vis a vis* the background summary, however, are irrelevant to the instant motion.

> 11.2 MEDIATION AND ARBITRATION
>
> 11.2.1 Mediation. Any Claim arising out of or related to the Design/Build Agreement of the Project shall be subject to mediation as a condition precedent to arbitration….
>
> 11.2.3 Arbitration. Claims which have not been resolved by mediation shall be decided by arbitration, which unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect at the time of arbitration. The demand for arbitration shall be filed in writing with the other party to the Design/Build Agreement and with the American Arbitration Association …. The demand shall be made within a reasonable time after the Claim, dispute or other matter in question has arisen, but no later than 30 days after mediation has failed.

*Defs.' Mot*., *Ex. B* (the "Prime Contract"), at pp. 21-22.

Following are relevant provisions of the Subcontract, as hereinafter defined, between Vermont L&S and Ragnar:

> 8. **Disputes.** (a) … In case of any dispute between Contractor [Ragnar] and subcontractor [Vermont L&S] in any way relating to or arising from any act or omission of Owner [CSX], Owner's agents or involving the Contract Documents or any provision of them, the Subcontractor agrees to be bound to Contractor by the terms of the Contract Documents to the same extent that Contractor is bound to Owner, by any and all preliminary and final decisions, determinations or agreements made by or between Contractor or Owner or otherwise authorized in the Contract Documents, provided however, that if the Contract Documents require Contractor and the Owner to arbitrate any claim, dispute or other matter arising out of or relating to the Contract Documents, Subcontractor agrees that any claim dispute, or other matter arising out of or relating to Subcontract, shall be settled according to the terms of this Subcontract. In Contractor's sole discretion, any arbitration between Contractor and Subcontractor may be consolidated into and become part of the arbitration proceedings between the Owner and Contractor, and the consolidated arbitration shall bind Contractor and Subcontractor. If the Contract Documents do not require Contractor to arbitrate, neither Contractor nor Subcontractor shall have the right to arbitrate

> claims, disputes or other matters relating to this Subcontract or Subcontractor's work.
>
> (b) If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be resolved through direct discussions, the parties shall participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before any recourse to any other form of binding dispute resolution … Engaging in mediation is a condition precedent to any other form of binding dispute resolution.

*Id., Ex. A* (the "Subcontract"), at p. 9. The Subcontract defines "Contract Documents" to include all plans, drawings, specifications, general conditions and other documents incorporated in the General Contract. The Contract Documents are expressly made part of the Subcontract and incorporated therein by reference and Vermont L&S warranted that it had examined all the Contract Documents. *Id.*, at p. 2. In another provision of the Subcontract, Contract Documents are defined to include: the RB Letter of Intent dated March 20, 2011, the Scope of Work Retaining Walls dated March 20, 2011, and the Specific Scope of Work for ERS dated March 18, 2011 copies of which were attached to the Subcontract, and the VLS contract attachment dated May 10, 2011. *Id.*, at p. 3. Finally, the Subcontract provides that the "Subcontract Documents" include the Subcontract, the General Contract (*i.e.*, the Prime Contract), the Contract Documents and the drawings, specifications, addenda, and other matters described in the Contract Documents Schedule attached to the Subcontract. *Id.*, at p. 3, ¶(e).

> 21. **Governing Law and Jurisdiction.** THE EXECUTION, INTERPRETATION, AND PERFORMANCE OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF ILLINOIS (EXCLUDING ANY CONFLICTS OF LAWS PRINCIPLES). ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN MASSACHUSETTS COURTS, STATE OR FEDERAL, … .

*Id.*, at p. 16 (emphasis in original).

*Governing Legal Principles*

At its most basic level, the FAA is a "congressional declaration of [the] liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983). Agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, the FAA "ensure[s] judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238 (1985), and "place[s] such agreements upon the same footing as [any] other contract[]." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271, 115 S. Ct. 834 (1995). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S. Ct. 1801 (1967) ("[I]t is clear beyond dispute that the [FAA] is based upon and confined to the incontestable federal foundations of control over interstate commerce and over admiralty") (internal quotations and citations omitted); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage").

When a party seeks either to compel arbitration under Section 4 or to stay proceedings under Section 3, they must satisfy four requirements: "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003); 9 U.S.C. §§ 3-4. Only if all prongs of the test are satisfied will the court grant a motion to compel arbitration. *Combined Energies v. CCI, Inc.*,

514 F.3d 168, 171 (1st Cir. 2008)(internal citations and citation to quoted case omitted). Arbitration is also subject to waiver and therefore, the court must determine that the party seeking to compel arbitration has not waived its right to do so. *Id.*

Whether a claim falls within the reach of a particular arbitration clause is a question of law for the court, bearing in mind that federal policy favors arbitration. *Id.* (FAA establishes as matter of federal law, that any doubts concerning scope of arbitrable issues should be resolved in favor of arbitration). At the same time, the court must be cognizant that "'arbitration is simply a matter of contract between the parties; it is a way to resolve disputes-but only those disputes-that the parties have agreed to submit to arbitration' … . Therefore, '[w]hen deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' " *Id.* (internal citation and citations to quoted cases omitted). If it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927. "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347 (1960)). Finally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.*" *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941 (emphasis added).

*Application of the Law to this Case*

Vermont L&S has filed a cross-claim against Ragnar and Travelers seeking indemnification from Ragnar and its surety, Travelers, to the extent that it is found to liable to Con-Tech.[5] Ragnar's cross-claims are based on Vermont L&S's alleged obligation to indemnify it under the Subcontract with respect to Con-Tech's claims against it and Travelers for payment of construction materials that Con-Tech provided to Vermont L&S. Ragnar and Travelers argue that under the terms of the Subcontract, which incorporates the Prime Contract by reference, Ragnar and Vermont L&S are contractually obligated to arbitrate any dispute between them arising out of the Subcontract in accordance with Construction Industry Arbitration Rules of the American Arbitration Association. They further argue that the cross-claims in this action fall within the scope of the arbitration clause. Vermont L&S, on the other hand, argues that the motion to compel arbitration should be denied because: (1) applying Illinois law, the Subcontract does not incorporate by reference the Prime Contract's agreement to arbitrate; (2) even if incorporated by reference, the instant cross-claims do not fall within the scope of the arbitration provision; and (3) Ragnar has waived its right to arbitrate and/or failed to invoke its right to arbitrate in a timely manner .

Under Illinois law, which governs this case, "the parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. An arbitration agreement will not be extended by construction or implication." *Salsitz v. Kreiss*, 198 Ill.2d 1, 761 N.E.2d 724, 731 (Ill. 2001) (citations omitted). Furthermore, while "'[g]enerally, one instrument may incorporate another instrument by reference[,]' '[t]he contract must show an intent to incorporate the other

---

[5] As noted previously, the Court has allowed V&S Lumber's motion to file additional cross-claims against Ragnar and Travelers.

document and make it part of the contract itself.' 'When determining under Illinois law whether something is incorporated into a contract, [the court] limit[s] [its] inquiry to the four corners of the contract.' " *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002)(internal citations and citations to quoted cases omitted).

Under Illinois law, the court must look to the intent of the parties and whether there is a clear intent to incorporate an arbitration provision. Vermont L&S takes the position that Illinois law requires that incorporation by reference by clear and specific and that in this case, the Prime Contract's arbitration provisions are not expressly incorporated by reference into the Subcontract.[6] However, Vermont L&S's argument ignores the fact that the Subcontract expressly provides that all Contract Documents are part of the agreement and incorporated by reference therein-- Vermont L&S does not dispute that the Prime Contract is a "Contract Document" for purposes of the Subcontract. Furthermore, in the Subcontract Vermont L&S expressly warranted and represented that it had examined all Contract Documents. For that reason, the court will presume that it was familiar with the Prime Contract's arbitration provisions at the time it entered into the Subcontract. Moreover, it (the Subcontract) provides that Vermont L&S is bound to settle disputes with Ragnar in the same manner that Ragnar is bound to CSX under the Prime Contract.

Vermont L&S also makes much of the fact that the agreement provides that "Subcontractor agrees that any claim dispute, or other matter arising out of or relating to Subcontract, shall be settled according to the terms of this Subcontract", which it argues is

[6] Although it contends that the Subcontract does not incorporate by reference the Prime Contract's arbitration provisions, Vermont L&S includes the following affirmative defense in its answer to Ragnar's cross-claims: "Ragnar agreed to mediate the disputes giving rise to its crossclaims as a condition precedent to litigating or arbitrating them, and had not yet done so." *Vermont Lumber & Stone Works, Inc.'s Reply To Crossclaim filed by Ragnar Benson, LLC* (Docket No. 23).

superfluous if, as Ragnar argues, the prior language incorporates the Prime Contract's requirement to arbitrate. However, a reasonable reading of this provision, is that the a party to the Subcontract seeking to invoke arbitration must first satisfy the less formal means of dispute resolution set forth in Section 8 of the Subcontract rather than the mediation requirements set forth in Sections 11.2.1- 11.2.2 of the Prime Contract. [7] Therefore, the language is not superfluous.

While the specific language utilized in the Subcontract is not a model of clarity, a straightforward reading of *all* the various provisions evidences a clear intent by the parties to the agreement to arbitrate all claims involving and/or arising under the Subcontract. *Accord Turner Const. C. v. Midwest Curtainwalls, Inc.*, 187 Ill.App.3d 417, 543 N.E.2d 249 (Ill. App. Ct. 1989). I further find that a protracted discussion is not warranted regarding whether the asserted claims are subject to arbitration. The parties' cross-claims (including Vermont L&S's proposed additional cross-claims) easily fall within the scope of the broad arbitration provisions. Therefore, the question now becomes whether (1) Ragnar waived its right to seek to compel arbitration; and /or (2) Ragnar timely invoked its right to compel arbitration.

*Waiver; Failure To Invoke Arbitration In Timely Manner*

"[A]s federal policy strongly favors arbitration of disputes, a '[w]aiver is not to be lightly inferred,' thus reasonable doubts as to whether a party has waived the right to arbitrate should be

[7] The differences between these provisions is not insubstantial. For example, should a dispute arise under the agreement, the Subcontract first requires that the parties engage in direct discussions; if those discussions fail, then parties must participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association. The location of the mediation is to be in the location of the project. *See Subcontract*, at ¶ 8(b). The Prime Contract, on the other hand, does not require that the parties engage in direct discussions prior to mediating. Furthermore, the parties can mutually agree to utilize an independently selected mediator and not to mediate in accordance with the Construction Industry Rules of the American Arbitration Association. Additionally, a party may request arbitration concurrently with the filing of a demand for mediation (which shall be stayed for 60 days to permit the mediation to proceed). The Prime Contract also provides that the mediation shall take place in Duval County Florida (unless the parties mutually agree to another location). *See Prime Contract*, at ¶¶11.2.1-11.2.2.

resolved in favor of arbitration' However, 'an arbitration provision has to be invoked in a timely manner or the option is lost.' Waivers of arbitral rights need not be express, but may be implied from the particular circumstances." *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005)(internal citations and citations to quoted cases omitted). Where an agreement contains a choice of law provision, the issue of waiver is determined by in accordance with law of the jurisdiction chosen by the parties; therefore, Illinois law determines whether Ragnar has waived its right to compel arbitration. *See Bishop v. We Care Hair Dev. Corp.*, 316 All.App.3d 1182, 738 N.E.2d 610 (Ill. App. Ct. 2000)[8]. Under Illinois law, there is a presumption *against* waiver. *Id.* Nonetheless, "courts will find waiver when a party's conduct is inconsistent with the arbitration clause, thus indicating an abandonment of the right to arbitration. Specifically, a party waives its right to arbitrate by submitting arbitrable issues to a court for decision .... courts also consider the delay in a party's assertion of its right to arbitrate and any prejudice the delay caused the [opposing party]." *Id.*, at 1191 (internal citations omitted). Under Illinois law, "waiver of a contractual right to arbitration 'is not to be lightly inferred.'" *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill.App.3d 411, 425, 876 N.E.2d 203 (Ill.App.Ct. 2007). " '[T]he crucial inquiry is whether the party has acted inconsistently with its right to arbitrate' ". *Id.*

Vermont L&S conceded at oral argument that the filing of cross-claims alone does not in and of itself constitute a waiver of the right to arbitrate. At the same time, Vermont L&S argues that the failure to raise arbitration as an affirmative defense alone may be sufficient to constitute a waiver. Vermont L&S also argues that the lengthy delay before Ragnar sought to invoke arbitration also favors a finding of waiver. Ragnar, on the other hand, argues that it did not

---

[8] Under federal law, the issue of waiver is generally for the arbitrator. *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011). However, the issue of waiver due to litigation conduct is for the court. *Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 12 (1st Cir. 2005).

commence litigation in this Court, rather it was brought in by Con-Tech and therefore, it's filing of cross-claims against Vermont L&S does not constitute a waiver. Ragnar also argues that its failure to raise arbitration as an affirmative defense should not constitute a waiver and that under the circumstances, it timely invoked its right to compel arbitration.

Ragnar and Vermont L&S were both brought into this Court by Con-Tech; both were served with the complaint on September 5, 2012. On October 5, 2012, Vermont L&S filed its answer to Con-Tech's complaint and its cross-claims against Ragnar. *See Answer and Complaint* (Docket No. 17). On October 19, 2012, Ragnar filed its answer to Con-Tech's complaint, and its cross-claims against Vermont L&S. *See Defendant Ragnar Benson, LLC's Answer to Complaint and Crossclaim Against Vermont Lumber & Stoneworks [sic.], Inc.* (Docket No. 20). On October 25, 2012, Ragnar filed its answer to Vermont L&S's cross-claims. Ragnar did not raise arbitration as an affirmative defense. *See Ragnar Benson, LLC's Answer to Crossclaim of Vermont Lumber &Stoneworks [sic.], Inc.* (Docket No. 22). On January 29, 2013, judgment was entered in favor of Con-Tech against Vermont L&S. *See Stipulation for Judgment* (Docket No. 35). On February 15, 2013, Con-Tech filed an amended complaint; on March 26, 2013, the Court allowed Vermont L&S's motion to strike Count I of the amended complaint, leaving only Count II (Con-Tech's claim against Ragnar and Travelers on the bond). On March 22, 2013, Ragnar filed the instant motion. The parties have not engaged in any other discovery with respect to the cross-claims. No trial date has been set.

In determining whether a party seeking to compel arbitration has waived that right, Illinois courts *consider* whether the party seeking to compel arbitration invoked that right at the earliest possible time, *i.e.,* when it first submitted a legal and/or factual issue of law to the court, such as in a complaint, answer, counter-claim or cross-claim. *See Gateway Drywall &*

*Decorating, Inc. v. Village Const. Co.*, 76 Ill.App.3d, 812, 395 N.E.2d 613 (Ill.App.Ct. 1979). However, such failure does not automatically result in waiver. *See TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 381 Ill.App.3d 1171, 890 N.E.2d 1220 (Ill.App.Ct. 2008). Therefore, Ragnar's failure to raise arbitration as an affirmative defense while a factor in the court's analysis, does not compel a finding of waiver.

It is troubling that Ragnar not only failed to invoke its right to arbitration in its answer and cross-claims-- it also initially took the position that it did not want to arbitrate.[9] In fact, Ragnar's stated reason for failing to seek arbitration, *i.e.,* the pendency of Con-Tech's suit against it, remains true today (at least as reflected in the Court's docket). Finally, the specter of arbitration was raised as an affirmative defense by Vermont L&S in its answer to Ragnar's cross-claims filed November 5, 2012. Nonetheless, Ragnar seemingly dragged its heels when it came to invoking its arbitration rights; indeed, by all accounts, the parties did not pursue mediation after January 2013, yet Ragnar did not file its motion to compel arbitration until March 22, 2013 (whether Ragnar did so in timely manner is a matter for the arbitrator, *see infra*).

At the same time, this case is in the very early stages: no discovery has been completed, no trial date has been set and although Ragnar could have invoked its right to arbitrate at an earlier date, the delay was, at most, a few months. Finally, while Vermont L&S suggests that it will be prejudiced by being forced to arbitrate due to the associated costs and expenses, such prejudice is not caused by any delay on Ragnar's part, rather it is a consequence of Vermont L&S agreeing under the Subcontract to arbitrate all disputes. Simply put, "Defendants' limited involvement in this case is not sufficient to find waiver of the right to arbitrate … it could hardly be said that the 'litigation machinery has been substantially invoked' nor that the parties were

[9] Ironically, early in the litigation, Vermont L&S was inclined to arbitrate the parties' disputes, but Ragnar was opposed. Ragnar represents that it was initially opposed to arbitration because Con-Tech was not obligated to arbitrate and it did not want "wish to be exposed to litigating in multiple forums." *Defs.' Mot.*, p. 3 at n. 2.

'well into preparation of a lawsuit by the time an intention to arbitrate was communicated.' *Bruck v. Morgan Stanley Smith Barney, LLC*, CIV. 12-12005-NMG, 2013 WL 2299529, --F.Supp.2d-- (D. Mass. May 23, 2013)(internal citations and citation to quoted case omitted). Under the circumstances, I cannot find that Ragnar's conduct was inconsistent with its right to arbitrate and therefore, there was no waiver.

*Timeliness of Notice to Arbitrate*

Section 8(b) of the Subcontract, which addresses the steps the parties must take prior to invoking arbitration, provides that should a dispute arise under the contract, the parties are to first attempt to settle the dispute through direct discussions. If that does not work, the parties are to participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before resorting to any other form of binding dispute resolution. Finally, either party is permitted to terminate the mediation at any time after the first session, however, "the decision to terminate must be delivered in person to the other party and the mediator." *Subcontract*, at ¶8(b). The Subcontract does not address the procedure governing the arbitration, and therefore, the parties' must have intended to be governed by the arbitration procedures set forth in Section 11.2.3-11.2.6 of the Prime Contract, which requires that demand for arbitration be made "no later than 30 days after the mediation has failed."

Vermont L&S argues that the mediation "failed," in January when they left the mediator's office unsuccessful with no further mediation contemplated, and therefore, Ragnar's demand to arbitrate is too late. Ragnar, on the other hand, argues that the mediation failed when on March 20, 2013, it sent notice to Vermont L&S and the mediator that it wished to terminate mediation proceedings and therefore, its demand to arbitrate was made within the requisite 30 days. As to this issue, *i.e.*, whether Ragnar timely invoked its right to arbitrate, since the

Subcontract does not include a "clear expression of an intent [to the] contrary," the court presumes that that the parties intended that the issue of the timeliness of submission of the dispute to arbitration be decided by the arbitrator. *See PaineWebber Inc. v. Elahi*, 87 F.3d 589 (1st Cir. 1996); *see also Marie*, 402 F.3d at 12 (timeliness of notice to compel arbitration is sort of procedural prerequisite that is presumed to be for arbitrator).

*Whether to Stay or Dismiss the Cross-Claims*

Ragnar and Travelers have requested that the parties' cross-claims be stayed pending arbitration. However, if a district court finds that each claim presented in a complaint is arbitrable, it remains within that court's discretion to dismiss the action. *Dialysis Access Ctr., LLC*, 638 F.3d at 372. All of the parties' cross-claims, including Vermont L&S's proposed additional cross-claims, are within the scope of the arbitration clause. Furthermore, the arbitration provision provides that arbitration awards shall be final. Given that the arbitration award shall be final and binding upon the parties, there is no good reason to stay the proceedings in this Court pending the arbitrator's decision. For that reason, Ragnar and Traveler's request to stay the cross-claim proceedings is denied and the parties' respective cross-claims shall be dismissed.[10]

**Conclusion**

It is hereby Ordered:

Defendants, Ragnar Benson Construction, LLC and Travelers Casualty and Surety Company of America's Motion To Stay Cross Claims and To Compel Arbitration (Docket No. 41) is ***granted***, in part, and ***denied***, in part. Accordingly, Vermont Lumber

[10] If Con-Tech's claim against Ragnar and Traveler's has been settled, then they shall forthwith inform the Court and file a stipulation of dismissal so this entire case may be closed.

& Stone Works, Inc. and Ragnar Benson, LLC are ordered to arbitrate their claims. The parties' respective cross-claims are hereby dismissed. [11]

***/s/ Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE

[11] Traveler's Casualty And Surety Company Of America has agreed to participate in the arbitration because Vermont L&S's claims against it are derivative of Vermont L&S's claims against Ragnar and dependent on them.